COWART, Judge.
At a final hearing in a dissolution of marriage action in 1980, the parties and their attorneys negotiated toward a property settlement agreement. After the parties had apparently reached an oral agreement, the trial court approved it and ordered the parties to reduce it to writing. The parties were unable to agree on a written agreement, and in 1982, the wife filed a complaint requesting that the court adjudicate that an unexecuted written document attached to her complaint was the true and correct property settlement agreement between the parties. The trial court held an evidentiary hearing and reviewed the transcript of the 1980 negotiations and, in 1983, entered an order approving a writing substantially like that advocated by the wife to be a binding agreement between the parties. Apparently the parties owned some portion of a mobile home subdivision named Northgate, including a particular Lot 8 in Block 1 of that subdivision on which was located a mobile home (the marital residence) and certain additions such as driveways, a carport, a screen porch, and a metal garage. Under the agreement the wife received that lot and the mobile home and improvements on it, but the husband, who owned adjoining land, was given the right of first refusal to purchase the lot and mobile home in the event the wife sold them. The husband conveyed the lot in question to the wife. Apparently the parties understood there was some question about the mobile home being in violation of county zoning ordinances. Paragraphs seven and eight of the agreement as adjudicated by the court are as follows:
7. First Party shall convey all his right, title and interest in and to the lot and trailer (marital residence) in Northgate Subdivision together with the contents, including kettle, thereof [as of July 29, 1980, to Second Party for one-half of the difference] between the fair market value of the lot and trailer ($40,000) and the principal balance due on the mortgage as of July 29, 1980 ($8,374.22), and Second Party shall execute to First Party a receipt for the value of same which shall be credited against First Party’s obligation to Second Party on the stock purchase above set forth (credit to be $15,812.89);
8. First Party shall execute any and all documents transferring title to the mobile home to the Second Party. First Party represents and warrants to the Second Party that the mobile home as located on the lot does not violate any county ordinance and will indemnify and hold the Second Party harmless *1217 from, any claims of the county that might be asserted that would interfere with Second Party’s use and enjoyment of the property or the sale of the property; [emphasis supplied].
In 1984 the wife had the lot surveyed and determined that the metal garage on her lot encroached 3.75 feet on the adjoining property owned by the husband. In 1985 the wife filed a motion for enforcement of the final judgment alleging that the husband failed to comply with paragraph 8 of the property settlement agreement. At the hearing on that motion the wife presented evidence that the county land use regulations required a rear lot setback of twenty feet, and that the encroachment reduced the value of the lot and improvements by an estimated $5,300. At a 1986 hearing on the wife’s motion for enforcement, the trial court, over the husband’s objections, reviewed a partial transcript of the 1980 dissolution proceedings wherein at one point in the negotiations the husband’s lawyer had stated that it was understood that some additional land outside the lot in question “would be required to be conveyed since it encroached upon other lands of Northgate and that will be done as a part of this proceeding.” After the hearing, the trial court entered an order requiring the husband to convey to the wife a strip of land 23.75 feet wide and 100 feet long adjoining the lot in question. The husband appeals. We reverse.
The adjudication in 1983 of the true agreement of the parties established that agreement with judicial finality and the trial judge in 1986 (who was not the same trial judge who entered the 1983 order) should not have again examined the original negotiations between the parties in 1980 and found the wife was entitled to the conveyance of additional property. The relevant portion of paragraph 8 of the agreement adjudicated in the 1983 order is complete on its face and unambiguous and parole evidence was inadmissible to contradict, defeat, or modify that agreement, or adjudicate, change, add to, or subtract from it, or affect its construction. See Lemon v. Aspen Emerald Lakes Associates. Ltd., 446 So.2d 177 (Fla. 5th DCA 1984). In the relevant portion of paragraph 8 the husband simply represented and warranted to the wife that the mobile home as located on Lot 8, Block 1, did not violate any county ordinance and the husband would indemnify and hold the wife harmless from any claims asserted by the county that interfered with the wife’s use and enjoyment of the property or the sale of that property. There is no allegation or evidence that the county has asserted any claim that has interfered with the wife’s use and enjoyment of the property or with a sale of the property. Whenever there is a breach of the husband's representation and warranty, the wife will be entitled to money damages for indemnification as to any damages resulting from a breach of such representations and warranty. Under the established agreement she is not entitled to a conveyance of additional land from the husband. The appealed order directing a conveyance is
REVERSED.
COBB and SHARP, JJ., concur.